OPINION.
The defendant-appellant, Gregory Strong, appeals from his conviction for trafficking in cocaine, a violation of R.C.2925.03(A). In his four assignments of error, he asserts that the trial court erred by (1) failing to suppress evidence obtained as a result of a police search of his automobile, (2) qualifying the police informant who was instrumental in his arrest as an expert in drug transactions, (3) admitting hearsay statements of an unavailable witness against him, and (4) denying his Crim.R. 29 motion for acquittal. Finding no merit in any of these assignments, we affirm.
 FACTS
On April 17, 1997, Michael Williamson, a convicted drug dealer turned volunteer informant, called Officer Carl Watts at the village of Lockland police station. Williamson advised Watts that he had information that Strong was selling drugs in the village. Officer Watts requested that Williamson come to the police station to discuss the matter further. At the police station, Williamson advised Watts that he had merely to call Strong's beeper to arrange a drug buy. This was done using the station's cellular phone. When Strong returned the page, Williamson, in the presence of Officer Watts, arranged to buy $250 of crack cocaine from Strong. Arrangements were made to conduct the transaction in the parking lot of the Lockland post office.
Prior to the meeting with Strong, Officer Watts searched Williamson and Williamson's car for drugs.[1] He supplied Williamson with $250 that he had earlier photocopied for purposes of identification. A transmitter was planted in Williamson's car near the driver's seat. This device transmitted his voice to a listening and recording unit in Officer Watts's car.[2]
The two men then drove separately toward the post office. Officer Watts parked across the street in an unmarked vehicle. Soon, Williamson testified, Strong drove by and called him on the cellular phone, insisting that the location of the buy be switched to an apartment complex down the street. Williamson, fearful for his safety, reluctantly acquiesced. Officer Watts was able to maintain observation of the buy from his vantage point on the street. He personally observed Strong drive past in his vehicle and stop at the apartment complex.
Williamson testified that when he got to the apartment complex he parked a couple of cars away from Strong's vehicle. He stated that Strong was already out of his vehicle, and that he observed Strong hand a plastic bag of something, which he believed to be marijuana, to three white males with whom he was speaking. Williamson testified that Strong then walked over to his vehicle and asked Williamson for the drug money. Williamson testified that he gave Strong the $250. At that point, he stated, Strong started walking down the street, and he, Williamson, followed in his car until finally he became impatient and asked for the crack cocaine that he had just purchased.
Williamson testified that Strong then took the cocaine "out of his mouth" and gave it to him. He stated that he then put the cocaine in a cigarette pack and transported it to a gas station where the police were waiting.
As soon as the transaction was complete, Officer Watts, having been signaled by Williamson, went in pursuit of Strong. Officer Watts testified that Strong stepped quickly back into his vehicle and drove at a fast pace out of the apartment complex and onto the street. According to Officer Watts, Strong ran a stop sign as he followed him, indicating to him that Strong had become aware that he was being followed. A marked patrol vehicle with its siren activated fell in behind Officer Watts's car as the pursuit continued. Officer Watts testified that the pursuit ended when Strong struck a parked vehicle after turning a corner, allowing the officers to block his vehicle.
Strong was then ordered at gunpoint to get out of his car and placed under arrest. A search of his vehicle ensued both at the scene and back at the police station. The search at the scene produced a cellular phone. When Officer Watts pushed "redial," he was connected to the cellular telephone in the possession of Williamson. A digital beeper and a $50 bill were taken off of Strong's person when he was placed under arrest. Under the driver's seat, Officer Watts found $206.16 in crumpled bills and coins. Furthermore, as part of an intake search of his clothing after he was brought to the Hamilton County Justice Center, Strong was found to have 4.5 grams of marijuana inside the lining of his jacket.
Based upon information received from Officer Watts, Lt. William Torbert intercepted the three white males with whom Strong had been seen at the apartment complex. One of the three, Ronald Spears, was found to have a bag of marijuana on his person. Lt. Torbert testified that Spears stated that he had bought the marijuana from Strong.
Strong was charged with trafficking in cocaine (sales less than bulk), a violation of R.C. 2925.03(A)(1), and trafficking in marijuana, a violation of R.C. 2925.03. A jury acquitted him of the charge of trafficking in marijuana, but found him guilty of the charge of trafficking in cocaine.
 MOTION TO SUPPRESS
In his first assignment of error, Strong argues that the trial court erred by denying his motion to suppress evidence obtained from the search of his car. According to Strong, when the police caught up to his car and forced him out at gunpoint, the police "lacked sufficient probable cause to make any stop whatsoever." In Strong's view, the police had only the word of Williamson, "a convicted felon and drug addict," that Strong was engaged in drug trafficking on April 17, 1997.
We find this argument baseless. The evidence presented during the hearing on the motion to suppress paralleled that presented at trial (absent, however, the testimony of Williamson, whose identity the police were not then willing to divulge). Officer Watts testified that Williamson had proven a reliable informant in several previous drug arrests and had been used not only by him but also by other enforcement agencies as well. He also testified that the cellular phone call Williamson made to Strong at the police station, arranging the drug buy, was done in his presence. Officer Watts then described how Strong appeared in the vicinity of the post office at the scheduled time of the arranged buy, and how his conduct at the apartment complex gave every indicia of a person engaged in selling drugs. According to Officer Watts, the three white males seen with Strong were familiar to him as drug users. Then, when Officer Watts began to follow Strong in his unmarked vehicle, Strong ran a stop sign and refused to pull over even after a marked police cruiser with its siren activated joined the pursuit.
In sum, the evidence was more than sufficient to cause a reasonably prudent person to conclude that Strong was engaged in criminal activity. Indeed, this conclusion was well nigh inescapable. The police set up a "controlled buy," and Strong had the unhappy fortune to sell drugs to an informant while being observed by the police. It is specious to suggest that the police were relying solely on the word of Williamson when Strong's observable conduct was easily an equal factor in his arrest. That conduct was such that the police would have been remiss, if not derelict, had they failed to arrest him.
Strong's first assignment of error is, therefore, overruled.
 THE BAGGIE AS A MATTER OF EXPERTISE
In his second assignment of error, Strong argues that the trial court erred when it told the jury that Williamson was "essentially testifying as an expert" when he gave his opinion that the plastic bag that he saw Strong hand the three white suspects was a "baggie" containing marijuana.
As the state points out, this testimony concerned the trafficking-in-marijuana charge of which Strong was acquitted. Therefore, any error would have been harmless with respect to Strong's conviction for trafficking in cocaine, since there was no "expert" opinion evidence admitted with respect to that charge. Further, it should be pointed out that the baggie in question was recovered from one of the suspects, Ronald Spears, and its contents tested by the police and found, in fact, to contain marijuana. This fact was, therefore, in evidence regardless of Williamson's opinion on the matter.
Strong's second assignment of error is overruled.
EVID.R. 804(B)(3)
In his third assignment of error, Strong argues that his right to confront witnesses against him was violated when the trial court allowed into evidence the hearsay statements of Ronald Spears, one of the three white males, that he had purchased a bag of marijuana from Strong for $50. The hearsay statements (one written, one oral) were admitted after the trial court found that Spears was unavailable despite police efforts to locate him, and that the statements constituted statements against penal interest. Strong challenges only the latter finding. Specifically, he argues that the statements were not against penal interest because, as a result of his purchase of the marijuana, Spears was given only a "payout ticket" for a minor misdemeanor.
The oral hearsay statement attributed to Spears occurred when Lt. Torbert stopped him and his two companions after they had left the apartment complex. Lt. Torbert testified that he pulled his cruiser alongside the three suspects and exited from his vehicle with weapon drawn, ordering them on the ground. He stated that he read them their rights and informed them that they had just been seen making contact with a black male. Lt. Torbert testified that he then asked them if they had just purchased drugs. According to Lt. Torbert, Spears responded by admitting that he had just purchased some marijuana and surrendered a baggy containing the substance. Lt. Torbert testified that Spears then stated that he had purchased the marijuana from Strong for $50. At that point, the three suspects, including Spears, were placed under arrest and put in the police cruiser.
The written hearsay statement was obtained at the police station and consisted of a document signed by Spears stating, "I have known Gregory Strong for approximately six months. I met him through a friend, one Gary Underwood. I have been buying marijuana from him for the past six months and on today's date I purchased a fifty-dollar sack of marijuana from Greg Strong. I gave him a fifty-dollar bill for the marijuana. I met Greg Strong on Hillside Avenue and then we walked to the wooded area at the end of Pope Drive. This is where I bought the marijuana."
The test to determine whether admission of an out-of-court statement violates a defendant's right to confront witnesses is whether the statement is "so trustworthy that adversarial testing can be expected to add little [to the statement's] reliability."White v. Illinois (1992), 502 U.S. 346, 357, 112 S.Ct. 736, 743, quoted in State v. Madrigal (2000), 87 Ohio St.3d 378, 385,721 N.E.2d 52, 61. In Madrigal, the Ohio Supreme Court, adopting the United States Supreme Court's analysis in Lilly v. Virginia
(1999), 527 U.S. 116, 119 S.Ct. 1887, held that the statements of co-defendants and accomplices that shift or spread blame to the defendant are "presumptively unreliable." Id. at 386,721 N.E.2d at 61, citing Lilly at ___, 119 S.Ct. at 1897. The presumption can be rebutted only when the circumstances surrounding the making of the statements render them particularly worthy of belief. Id.
at 387, 721 N.E.2d at 63, citing Idaho v. Wright (1990),497 U.S. at 819, 110 S.Ct. at 3148. According to the court in Madrigal, "[t]he circumstantial guarantees of trustworthiness are those that exist at the time the statement was made and do not include those that may be added by using hindsight." Id., citing Wright at 820,110 S.Ct. at 3149.
Initially, we note that we are not persuaded by Stong's argument that the statements attributed to Spears fall under the category of statements by an accomplice or co-defendant. Spears and Strong were accused of committing two separate crimes — Strong of selling marijuana, Spears of buying it. The two crimes, one a felony and one a minor misdemeanor, contain different elements and involve different anima. An accomplice, on the other hand, is one who unites with the principal offender in the commission of a crime. Black's Law Dictionary (5 Ed. 1979) 16. Similarly, a co-defendant is a person "charged in [the] complaint or indictment with [the]same crime." Id. at 233 (emphasis supplied). Spears was not even indicted, let alone indicted along with Strong.
Furthermore, it cannot be said that the statements made by Spears shifted the blame off of him and onto Strong. There is nothing in the record to suggest that Spears was ever suspected of selling marijuana. His statements admitted to the only crime of which he was suspected, which was purchasing the drug. The fact that Spears identified Strong as the person who sold him the marijuana did not in any way lessen his guilt of possession. Therefore, there is no reason to treat the statements with the same heightened degree of skepticism as the type of blame-shifting statements that were addressed by the courts in Lilly andMadrigal.
Finally, for the reasons discussed, we hold the statements attributed to Spears bore sufficient indicia of reliability to satisfy the concerns of the Confrontation Clause, based specifically upon the circumstances in which they were made. The statements were admissions of illegal conduct made to the police. They were certainly against Spears's penal interests. As opposed to making a self-serving statement that attempted to shift the blame or exonerate himself, Spears admitted fully to his crime. He appears to have had no self-interest in identifying Strong as the person from whom he had purchased the marijuana.
We reject, further, Strong's argument that the statements by Spears should not have admitted under the analysis of United States Supreme Court in Bruton v. United States (1968),391 U.S. 123, 88 S.Ct. 1620. As the state points out, Bruton concerned the statement of a co-defendant who was tried with Bruton, against whom the statement was inadmissible. Here, there was no joint trial, nor was Spears even a co-defendant.
Finally, the jury acquitted Strong of the charge of selling marijuana, clearly indicating that it chose not to credit the statements of Spears, perhaps because of their hearsay nature. Any possible error in the admission of these statements would therefore be harmless.
Strong's third assignment of error is, therefore, overruled.
 WEIGHT OF THE EVIDENCE
In his fourth and final assignment of error, Strong argues that his conviction for trafficking in cocaine was based upon insufficient evidence and was contrary to the weight of the evidence. We emphatically disagree.
Strong was the victim of a "controlled buy" — an investigative technique in which an informant is used to arrange the purchase of drugs after being searched and provided with marked bills. Strong was, in every sense of the phrase, caught in the act. He responded to Williamson's offer to purchase drugs; he showed up at the arranged location; he communicated with Williamson to change the location; and then he proceeded, in the view of several officers, to conduct himself in a manner that gave every appearance of a man selling drugs. One of the officers, Darin Lundsford, testified that he was actually able to see the exchange of drugs. Further, Strong then fled from the police. When arrested, Strong had upon him the marked bills and a cellular phone that, when the redial button was pressed, connected with the police cellular phone in Williamson's possession. Finally, Williamson, whom the jury was free to believe, testified that Strong sold him crack cocaine. As proof of this, Williamson, who was searched for drugs before the controlled buy, immediately surrendered to police the crack cocaine that he claimed to have just bought from Strong.
We hold, given these facts, that the evidence of Strong's guilt was overwhelming. Certainly there was evidence upon which a reasonable person could find all the elements of guilt. Moreover, there is no basis to argue that the jury lost its way in finding Strong guilty of trafficking in cocaine.
Strong's fourth and final assignment of error is overruled. Accordingly, the judgment of the trial court is affirmed.
Judgment affirmed.
SUNDERMANN and SHANNON, JJ., concur.
RAYMOND E. SHANNON, retired, from the First Appellate District, sitting by assignment.
[1] Williamson was accompanied by a female friend both at the police station and during the drug transaction. Because her presence plays no part in any of the legal issues raised on appeal, she will not be referred to further.
[2] Due to the use of a tape that was not completely rewound, the tape recording was cut short and was not an important part of the evidence.